******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD HYLTON *v.* GARFIELD GUNTER ET AL.
(SC 19159)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued April 23—officially released September 9, 2014*

*Houston Putnam Lowry*, with whom, on the brief, was *Julie A. Morgan*, for the appellant (named

defendant).

*Gerald M. Beaudoin*, with whom, on the brief, was *Francisco A. Cardona*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The sole issue in this certified appeal is whether we should overrule *Lord* v. *Mansfield*, 50 Conn. App. 21, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998), in which the Appellate Court held that a judgment is not final for purposes of appeal under General Statutes § 52-263[1] when the trial court has awarded, but not yet determined the amount of, common-law punitive damages, which are limited under Connecticut law to attorney's fees and certain litigation costs. See, e.g., *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 237–38, 477 A.2d 988 (1984). The defendant Garfield Gunter[2] appeals, upon our grant of his petition for certification,[3] from the judgment of the Appellate Court dismissing his appeal, pursuant to *Lord*, from the judgment of the trial court awarding the plaintiff, Richard Hylton, $342,648 in compensatory damages, and " 'punitive damages in the form of attorney's fees' " on the counts of his complaint alleging, inter alia, fraud and civil theft. *Hylton* v. *Gunter*, 142 Conn. App. 548, 551, 66 A.3d 517 (2013). We agree with the defendant's claim that *Lord* was wrongly decided because, among other reasons, it is inconsistent with this court's decision in *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988), which adopted the "bright line rule" that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." Accordingly, we reverse the judgment of the Appellate Court.

The record and the Appellate Court's opinion reveal the following relevant facts and procedural history. The plaintiff and the defendant are equal members of Progressive Electric & Telecommunications, LLC (Progressive). The plaintiff stopped working for Progressive in July, 2008, leaving the defendant to manage its operations and finances. After the plaintiff learned that the defendant was misappropriating Progressive's moneys for his own personal use, he brought this action seeking damages from the defendant in an eight count complaint alleging fraud, negligence, breach of contract, unjust enrichment, civil theft, conversion, breach of fiduciary duty, and breach of the implied duty of good faith and fair dealing. See *Hylton* v. *Gunter*, supra, 142 Conn. App. 551 and n.3. The case was tried to the court. See id., 550–51.

"On March 14, 2011, the trial court issued a memorandum of decision in which it found in favor of the plaintiff on the eight counts of his complaint and awarded him $342,648 in compensatory damages. The court also found that the plaintiff was entitled to 'punitive damages in the form of attorney's fees' on the counts alleging fraud, civil theft, breach of fiduciary duty, and breach of the implied duty of good faith and fair dealing,[4] and it instructed the plaintiff to file an affidavit of attorney's

fees within thirty days. On April 6, 2011, the defendant filed this appeal [in the Appellate Court]. On May 20, 2011, after a hearing, the trial court awarded the plaintiff $23,400 in punitive damages, which represented the amount claimed in attorney's fees. The defendant did not amend his appeal subsequent to the trial court determining the amount of the punitive damages. On September 12, 2012, this appeal was placed on the [Appellate Court's] own motion calendar for dismissal for lack of a final judgment on the ground that, at the time the appeal was filed, the trial court had not yet resolved the plaintiff's claim for punitive damages. After the motion hearing, the [Appellate Court] marked the matter over and ordered the parties to brief whether the defendant's appeal from the March 14, 2011 judgment was an appeal from a final judgment. Both parties subsequently briefed the issue and argued the issue as part of this appeal." (Footnotes altered.) Id., 550–51.

The Appellate Court subsequently dismissed the defendant's appeal for lack of a final judgment pursuant to § 52-263. See id., 552–54. The Appellate Court noted that, in *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23, this court held that " 'a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined.' " *Hylton* v. *Gunter*, supra, 142 Conn. App. 552. The Appellate Court then relied, however, on its subsequent decision in *Lord* v. *Mansfield*, supra, 50 Conn. App. 21, which "distinguished the reimbursement of attorney's fees from the awarding of punitive damages. Punitive damages . . . serve the purpose of vindicating the public interest and deterring others from committing similar wrongs. . . . This court held that an appeal taken prior to a determination by the trial court as to the recoverability and amount of punitive damages was not an appeal from a final judgment." (Citation omitted.) *Hylton* v. *Gunter*, supra, 552; see also id., 550 ("this court does not have subject matter jurisdiction to decide an appeal prior to a determination by the trial court of the recoverability and amount of punitive damages; a judgment is final only after such a determination is made"). The Appellate Court then concluded that, because the trial court's award of attorney's fees was not made pursuant to an authorizing statute, but rather, was "explicitly called . . . punitive damages, its manifest intention was to award the plaintiff punitive damages." Id., 554. Accordingly, the Appellate Court followed *Lord* and dismissed the defendant's appeal for lack of a final judgment. Id. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the defendant argues that the Appellate Court improperly dismissed his appeal for lack of a final judgment. Specifically, he relies on this court's endorsement of bright line rules in the final judgment context in *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23, as explained in *Benvenuto* v. *Mahajan*, 245 Conn.

495, 498–500, 715 A.2d 743 (1998). The defendant contends that there was a final judgment in this case because all that remained for the trial court to do was set the amount of attorney's fees, despite the fact that those fees were awarded in the context of common-law punitive damages rather than pursuant to a statute. The defendant further contends that the decision that controlled this case before the Appellate Court, *Lord* v. *Mansfield*, supra, 50 Conn. App. 23–28, was wrongly decided. He argues that *Lord* is inconsistent with *Paranteau* and *Benvenuto* because the case-by-case determination regarding the finality of judgments in *Lord*, which depends on whether an attorney's fees order is compensatory and integral to the judgment on the merits or collateral in nature, spawns confusion. In response, the plaintiff notes the policy behind the final judgment rule, namely, discouraging piecemeal litigation, and relies on the doctrinal distinction between attorney's fees awarded pursuant to a statute and those awarded as punitive damages, in arguing that the Appellate Court properly followed *Lord* in dismissing the defendant's appeal.[5] We agree with the defendant, and conclude that an appealable final judgment existed when this appeal was filed, despite the fact that the trial court had not yet determined the amount of the attorney's fees that comprised its common-law punitive damages award.

"As a preliminary matter, we set forth the standard of review. The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Khan* v. *Hillyer*, 306 Conn. 205, 209, 49 A.3d 996 (2012).

"The right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . It is . . . axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263 . . . ." (Internal quotation marks omitted.) *State* v. *Jamar D.*, 300 Conn. 764, 770, 18 A.3d 582 (2011).

It is well settled that a "judgment rendered only upon the issue of liability without an award of damages is interlocutory in character and not a final judgment from which an appeal lies." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 294 Conn. 280, 297, 984 A.2d 658 (2009); see also, e.g., *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 212, 608 A.2d 682 (1992); *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 84, 495 A.2d 1063 (1985). Nevertheless, "a judgment on the merits is final for purposes of appeal even though

the recoverability or amount of attorney's fees for the litigation remains to be determined." *Paranteau* v. *DeVita*, supra, 208 Conn. 523.

In concluding that a judgment of the trial court awarding common-law punitive damages limited to attorney's fees is final, despite the fact that the court has not yet determined the amount of those fees, we begin with a review of the leading case, *Paranteau* v. *DeVita*, supra, 208 Conn. 515. In *Paranteau*, this court considered whether an appealable final judgment existed when a trial court found that the defendant, a landlord, had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and granted the plaintiffs' request for attorney's fees pursuant to the authorizing statute, General Statutes § 42-110g (d), "but delay[ed] the determination of their amount." Id., 517. In holding that this judgment was final for purposes of appeal,[6] this court followed *Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196, 108 S. Ct. 1717, 100 L. Ed. 2d 178 (1988),[7] which had resolved a split in federal authority on point in favor of the majority view, which was "a bright line approach which obviates the need for individual case review through the implementation of a uniform rule stating that an unresolved issue of attorney's fees does not prevent judgment on the merits from being final and immediately appealable."[8] *Paranteau* v. *DeVita*, supra, 520. This court agreed with the United States Supreme Court that a "bright line rule provides notice that decisions on the merits and those on attorney's fees will be treated separately, giving clear guidance as to when an appeal on the merits must be taken. We do not believe the timeliness of an appeal should be based upon retrospective, technical considerations of whether a particular supplemental postjudgment claim for attorney's fees was collateral to, or an integral part of, the judgment on the merits. Such a case-by-case approach promotes, rather than eliminates, uncertainty as to when an appeal on the merits must be taken."[9] Id., 522–23. Thus, this court concluded that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined."[10] Id., 523.

Subsequently, this court decided *Benvenuto* v. *Mahajan*, supra, 245 Conn. 500, wherein it considered whether the Appellate Court's position that "without a determination of the amount of the attorney's fees, a judgment of strict foreclosure does not constitute a final appealable judgment,"[11] was consistent with *Paranteau*. This court "acknowledge[d] the analytical appeal of the position of the Appellate Court. In a strict foreclosure case, until the amount of attorney's fees is set by the court, the total amount of the debt is not fully determined, and any party wishing to redeem on his or her law day will not know precisely how much to pay in order to do so. That reasoning argues with

considerable persuasiveness for a conclusion that, in such a case, there is no final judgment for purposes of appeal until attorney's fees are determined. Thus, a judgment of strict foreclosure that does not contain a determination of attorney's fees does not fit comfortably with traditional notions of finality." Id., 501. Nevertheless, this court concluded in *Benvenuto* "that the bright line rule that we articulated in *Paranteau* applies as well to a strict foreclosure case. First, that is ordinarily what having a bright line test means: it applies across the board, even to cases that might not seem particularly apt for it. Thus, it attempts to relieve the parties who must live under it from the task of determining on a case-by-case basis when it applies and when it does not." Id.

Significantly, in *Benvenuto*, this court expressly rejected a narrow reading of the bright line rule of *Paranteau* "to apply only to those claims for attorney's fees that arise in postjudgment proceedings, such as are contemplated by CUTPA, the statute at issue in that case." Id., 502. Instead, this court emphasized the "advantages of having and applying a bright line rule regarding whether an outstanding determination of attorney's fees undermines the finality of a judgment on the merits that is otherwise final," observing that "[t]here are numerous contexts in which attorney's fees may be awarded, including foreclosure actions, actions on notes or other contracts with attorney's fees clauses, and statutory claims that carry with them the potential for an award of attorney's fees. In *Paranteau*, we recognized that in some cases the fees would be integral to the judgment on the merits and in others they would be collateral to it. . . . By opting for a bright line rule, we implicitly recognized that there would be some cases—indeed, this is such a case—in which the application of the bright line rule would mean that an attorney's fees award that would otherwise be considered integral to the judgment on the merits would nevertheless be severable from that judgment for purposes of finality." (Citation omitted.) Id. The court also noted that "reading *Paranteau* narrowly, so as to apply only to a 'supplemental postjudgment claim for attorney's fees' . . . would require the court and parties in each case to determine whether the claim fit within that category. That necessity would significantly reduce the value of having a bright line rule, which consists largely of the rule's clarity and, therefore, its efficiency for both the court and the parties." (Citation omitted.) Id., 502–503.

In contrast to *Benvenuto*, in *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 211, this court considered whether an appealable final judgment existed under *Paranteau* when the trial court had awarded damages, but not yet ruled on the plaintiff's claim of entitlement to prejudgment interest. The court followed the United States Supreme Court's decision in *Oster-*

*neck* v. *Ernst & Whinney*, 489 U.S. 169, 175–77, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989), and held that there was no appealable final judgment when the trial court had not yet ruled on a postjudgment motion for discretionary prejudgment interest because, first, "unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment . . . prejudgment interest traditionally has been considered part of the compensation due [the] plaintiff. Second, *unlike a request for attorney's fees or a motion for costs, a motion for discretionary prejudgment interest does not rais*[e] *issues wholly collateral to the judgment in the main cause of action . . . nor does it require an inquiry wholly separate from the decision on the merits . . . . In deciding if and how much prejudgment interest should be granted, a district court must examine—or in the case of a postjudgment motion, reexamine—matters encompassed within the merits of the underlying action.* . . . Third, the conclusion that a postjudgment motion for discretionary prejudgment interest postpones the finality of a judgment on the merits helps further the important goal of avoiding piecemeal appellate review of judgments." (Citation omitted; emphasis added; internal quotation marks omitted.) *Balf Co.* v. *Spera Construction Co.*, supra, 214–15.

This court's treatment of *Paranteau* in *Benvenuto* and *Balf Co.* leads us to conclude that an appealable final judgment existed when the defendant filed the present appeal, despite the fact that the trial court had not yet determined the amount of the attorney's fees that would comprise the common-law punitive damages award. In *Benvenuto*, this court expressly rejected a narrow reading of *Paranteau*'s bright line rule that would have limited its application to postjudgment claims for attorney's fees; instead, the court extended it to the strict foreclosure situation wherein the attorney's fees for the action are squarely part of the total debt amount subject to redemption. *Benvenuto* v. *Mahajan*, supra, 245 Conn. 502–503. Indeed, this court squarely rejected a distinction between attorney's fees integral to a judgment on the merits, and those that are more collateral in nature. See id., 502. This practically oriented conclusion is consistent with the fact that the calculation of the attorney's fees to be awarded in the present case as common-law punitive damages derives from evidence separate and apart from the merits of the case—in contrast to the prejudgment interest at issue in *Balf Co.*, where the determination of the amount of prejudgment interest was squarely encompassed within the damages determined in the main cause of action. *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15. Thus, we agree with the United States Supreme Court that the final judgment "effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those

fees by the statute or decisional law that authorizes them." *Budinich* v. *Becton Dickinson & Co.*, supra, 486 U.S. 201.

To this end, the plaintiff proffers no reasons, and we cannot conceive of any, why the benefits of the bright line rule articulated in *Paranteau* do not apply equally in the context of common-law punitive damages, which are limited under Connecticut law to litigation expenses, such as attorney's fees less taxable costs. See, e.g., *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). The assessment a court is required to make in order to award punitive damages is identical to the assessment required in any other matter involving a common-law, contractual, or statutory basis for departure from the "American rule," which is the general principle "that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party . . . ."[12] (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). Indeed, common-law punitive damages are akin to statutorily authorized attorney's fees in practicality and purpose, insofar as both "provide the same relief and serve the same function";[13] *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 99–100, 881 A.2d 139 (2005); namely, fully compensating injured parties.[14] *Berry* v. *Loiseau*, supra, 827; see also *Harty* v. *Cantor Fitzgerald & Co.*, supra, 97–98 (characterizing double damages under General Statutes § 31-72 as more punitive in nature than common-law punitive damages); *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 273, 828 A.2d 64 (2003) ("[a]s long as the court awards attorney's fees that are sufficient to cover a plaintiff's financial obligations to his or her attorney, such as an existing contingency fee agreement, the employee still will be made whole by the award of double damages"). Thus, our "practical approach to the matter suggests that what is of importance here is not preservation of conceptual consistency in the status of a particular fee authorization as 'merits' or 'nonmerits,' but rather preservation of operational consistency and predictability in the overall application of [the final judgment rule]." *Budinich* v. *Becton Dickinson & Co.*, supra, 486 U.S. 202. Accordingly, we conclude that an appealable final judgment existed when all that remained for the trial court to do was determine the amount of the attorney's fees comprising the common-law punitive damages that it previously had awarded.[15]

This brings us, then, to a determination of the vitality of the Appellate Court's decision in *Lord* v. *Mansfield*, supra, 50 Conn. App. 21, on which that court was bound to rely in the present case,[16] which held that a judgment was not final for purposes of appeal when the trial court had not yet determined the prevailing party's litigation expenses for purposes of calculating common-law punitive damages. See *Hylton* v. *Gunter*, supra, 142 Conn.

App. 552–53. In our view, the Appellate Court's conclusion in *Lord* is particularly inconsistent with this court's heavy emphasis on the benefits of bright lines in the final judgment context in *Benvenuto* v. *Mahajan*, supra, 245 Conn. 495, a decision published shortly before the release of *Lord*, but not cited therein.[17] Finally, in relying on this court's decision in *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 211, which had held that there was no final judgment when the trial court had not yet awarded prejudgment interest, the Appellate Court in *Lord* placed improper emphasis on the doctrinal source for a statutory award of attorney's fees, in contrast to what it deemed to be the compensatory and more integral purpose of common-law punitive damages. See *Lord* v. *Mansfield*, supra, 25–28. This distinction failed to consider the common purpose and effect of both statutory attorney's fees and common-law punitive damages, namely, to ensure the full compensation of plaintiffs in mitigation of the effects of the American rule. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100; *Berry* v. *Loiseau*, supra, 223 Conn. 827. Insofar as the analysis in *Lord* amounts to a triumph of form over substance, we conclude that it was wrongly decided and, accordingly, overrule it. The Appellate Court, therefore, improperly dismissed the defendant's appeal for lack of a final judgment.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the merits of the defendant's claims on appeal.

In this opinion ROGERS, C. J., and PALMER and EVELEIGH, Js., concurred.

[1] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[2] "The other defendant named in the complaint, Progressive Electric & Telecommunications, LLC, was defaulted for failure to appear and for failure to appear at trial. Accordingly, we refer in this opinion to . . . Gunter as the defendant." *Hylton* v. *Gunter*, 142 Conn. App. 548, 550 n.1, 66 A.3d 517 (2013) (per curiam).

[3] We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly dismiss the . . . defendant's appeal for lack of a final judgment?" *Hylton* v. *Gunter*, 309 Conn. 908, 68 A.3d 663 (2013).

[4] The Appellate Court noted that "the plaintiff, in his complaint, requested punitive damages as relief in only two of the relevant counts, those alleging civil theft and fraud. The court awarded punitive damages on four counts. That determination has not been challenged in this appeal." *Hylton* v. *Gunter*, supra, 142 Conn. App. 551 n.4.

[5] The plaintiff puts great stock in the fact that this court denied a petition for certification to review the Appellate Court's decision in *Lord*. See *Lord* v. *Mansfield*, supra, 247 Conn. 943. This reliance is, however, misplaced because it is well established that the "denial of a petition for certification to appeal does not signify that this court approves of or affirms the decision or judgment of the Appellate Court." *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 653, 6 A.3d 60 (2010).

[6] The final judgment issue in *Paranteau* arose in the context of determining the timeliness of the defendant's appeal, which was filed within twenty days after the trial court's subsequent "order determining the amount of attorney's fees to be awarded the plaintiffs, but more than twenty days after the trial court's judgment on the merits." *Paranteau* v. *DeVita*, supra, 208 Conn. 519. Because the court concluded that an appealable final judgment existed when the trial court rendered judgment on the merits without determining the amount of attorney's fees to be awarded under CUTPA, it also concluded that the defendant's appeal, filed more than twenty days after that judgment, was untimely. Id., 523. The court then concluded that the attorney's fee determination is an order that "may raise a collateral and independent claim that is separately appealable as a final judgment. . . . Thus, that portion of the defendant's . . . appeal challenging the fee award was timely filed . . . ." (Citations omitted.) Id., 523–24.

[7] See also *Ray Haluch Gravel Co.* v. *Central Pension Fund of International Union of Operating Engineers & Participating Employers*,     U.S.     , 134 S. Ct. 773, 777, 187 L. Ed. 2d 669 (2014) (extending *Budinich* bright line final judgment rule from attorney's fees based on statute to those awarded pursuant to contractual provisions).

[8] In contrast, this court noted that the federal "minority view favors analyzing each case individually to determine whether attorney's fees were 'collateral' to the main cause of action, in which case they would not preclude the finality and appealability of a judgment on the merits, or whether the fees were an 'integral part' of the merits of the case, thus requiring their determination before judgment could be deemed final for purposes of appeal." *Paranteau* v. *DeVita*, supra, 208 Conn. 520.

[9] In adopting the bright line rule, the court also observed that, "[f]rom the standpoint of efficient judicial administration . . . a bright line rule is far superior to the case-by-case approach" given the fact that, "because it has jurisdictional consequences, the time of appealability should above all be clear." *Paranteau* v. *DeVita*, supra, 208 Conn. 522. Subsequent case law, however, has "clarified that the twenty day time period for filing an appeal, as provided by Practice Book § 63-1 . . . is not subject matter jurisdictional. See *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 762–63, 628 A.2d 1303 (1993)." *Benvenuto* v. *Mahajan*, supra, 245 Conn. 502.

[10] The court acknowledged that this bright line rule "may, in some cases, lead to 'piecemeal' appeals of judgments on the merits and awards of attorney's fees. The problem of fragmented appeals, however, may be averted if trial judges delay rendering judgment on the merits until the fee issue is resolved and dispose of both the merits and attorney's fees in a single judgment. . . . If for some reason the question of attorney's fees must be decided after the entry of judgment on the merits, we suggest that the trial court insist upon the prompt filing and disposition of fee requests so that any pending appeal on the merits of the action may be amended to include any prospective appeal from a supplemental postjudgment award of attorney's fees." (Citation omitted; emphasis omitted.) *Paranteau* v. *DeVita*, supra, 208 Conn. 524.

[11] This court cited, as an example of the Appellate Court's position, *Connecticut National Bank* v. *L & R Realty*, 40 Conn. App. 492, 671 A.2d 1315 (1996). *Benvenuto* v. *Mahajan*, supra, 245 Conn. 500.

[12] In arguing that there is no final judgment in this case, the dissent observes that litigation costs and attorney's fees are distinct items when awarded pursuant to statute, but both are components of common-law punitive damages, with litigation costs being potentially substantial in amount. See, e.g., *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 237–38; see also *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 169, 30 A.3d 703 (plaintiff awarded punitive damages in amount of $210,039, consisting of $54,600 in attorney's fees and $155,439 in costs), cert. granted, 303 Conn. 904, 31 A.3d 1179 (2011) (appeal withdrawn January 27, 2012). We respectfully suggest that, for final judgment purposes, there is no significant difference, because the calculation of both attorney's fees and litigation costs derives from evidence that is collateral to that considered in the main cause of action. See, e.g., *Benvenuto* v. *Mahajan*, supra, 245 Conn. 502–503.

[13] We emphasize that our conclusion in this case is limited to those common-law punitive damages that compensate a party for the expenses of litigating his claim for damages; attorney's fees that themselves form the basis of a plaintiff's claim for compensatory damages, such as those occasioned by an insurer's breach of its duty to defend, are conceptually different and must be established in order to have an appealable final judgment. See R. Crummins, "Judgment on the Merits Leaving Attorney's Fees Issues Undecided: A Final Judgment?," 56 Fordham L. Rev. 487, 499–500 (1987);

accord *Broadnax* v. *New Haven*, supra, 294 Conn. 297 (no final judgment when determination postponed on valuation of front pay and lost pension value claims because their "resolution . . . was a necessary predicate to the finality of the judgment . . . because the claims seek compensation for the alleged wrongful conduct of the defendants, which depend[s] upon an assessment of the underlying merits of the transaction between the parties" [internal quotation marks omitted]); *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, supra, 282 Conn. 593–94 (noting distinction between insured's recoverability of attorney's fees incurred in defending underlying action, and those incurred in declaratory judgment action, which require policyholder to establish bad faith conduct on part of insurer or statutory or contractual basis for award).

[14] By way of background, we note that: "To furnish a basis for recovery of punitive damages, the pleadings must allege and the evidence must show wanton or wilful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought. . . . If awarded, punitive damages are limited to the costs of litigation less taxable costs, but, within that limitation, the extent to which they are awarded is in the sole discretion of the trier. . . . Limiting punitive damages to litigation expenses, including attorney's fees, fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury. . . . We have long held that in a claim for damages proof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the [subject matter], its reasonableness will be presumed." (Citations omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 335–36, 852 A.2d 703 (2004); but cf. *Berry* v. *Loiseau*, supra, 223 Conn. 827 (common-law punitive damages, "when viewed in the light of the increasing costs of litigation, also [serve] to punish and deter wrongful conduct").

We also note that, against the backdrop of our "conservative" measure of common-law punitive damages, "the legislature has authorized punitive damage awards for certain causes of action. These statutes fall into three categories: (1) those that limit the amount of the award to no more than two times the actual damages incurred; (2) those that designate a specific, albeit modest, dollar limit for such awards; and (3) those that authorize punitive damages, but leave the amount of the award to the discretion of the court." (Footnotes omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 672, 872 A.2d 423 (*Zarella, J.*, dissenting), cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). Punitive damages under these statutes, particularly under statutes that provide for awards of fees and costs in addition to punitive damages like CUTPA; see General Statutes § 42-110g; are distinct from common-law punitive damages because they "are not intended merely to compensate the plaintiff for the harm caused by the defendant but, rather, serve a broader, twofold purpose. First, they foster private enforcement of unfair trade practices by providing a reasonable incentive to litigate. . . . Second, they deter the defendant and others from engaging in future violations of CUTPA." (Citation omitted.) *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, supra, 673; see also *Ulbrich* v. *Groth*, 310 Conn. 375, 450–51, 78 A.3d 76 (2013) (discussing relationship between common-law punitive damages and those awarded under CUTPA).

[15] In arguing that a final judgment does not exist in this case, wherein common-law punitive damages have been awarded, but not yet calculated, the dissent notes the substantive proof required to justify the award; see footnote 14 of this opinion; and contends that "a challenge to an award of punitive damages often will relate directly to the merits of the action." We agree with the dissent with respect to the nature of the proof necessary to justify an award of common-law punitive damages in the first instance, and emphasize that our conclusion that a final judgment exists is limited to cases like this one, wherein common-law punitive damages have been awarded, and all that remains for the trial court to do is to find the amount of that award.

We also note that statutory punitive damage awards, which in many cases may be awarded in addition to attorney's fees and costs; see authorities cited in footnote 12 of this opinion; present unique final judgment considerations not present in this case. See *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649, 734 A.2d 1010 (1999) (no final judgment when jury has found liability under CUTPA, but before trial court has decided whether to award punitive damages, given that, under CUTPA, "courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages, the rights of the parties may be substantially affected by

the further proceedings that remain in this case").

[16] We acknowledge that, under the Appellate Court's well established policy, its three judge panel in this case was bound to apply *Lord* v. *Mansfield*, supra, 50 Conn. App. 21. See, e.g., *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208 ("[T]his court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." [Internal quotation marks omitted.]), cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

[17] The Appellate Court's decision in *Lord* was released on August 25, 1998; *Lord* v. *Mansfield*, supra, 50 Conn. App. 22; this court's decision in *Benvenuto* was released on July 21, 1998. *Benvenuto* v. *Mahajan*, supra, 245 Conn. 495.